## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JAREER JASER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:18-CV-3429-B-BH** |
| | § | |
| **AT&T SERVICES, INC., ET AL.,** | § | |
| | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendant City of Dallas's Rule 12(b)(6) Motion to Dismiss, and Brief in Support*, filed April 26, 2019 (doc. 55).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I.  BACKGROUND

Jareer Jaser (Plaintiff) sues his former employer, several of its employees, the City of Dallas (the City), and Officer Tony Black (Officer Black) and Sergeant Mohaer of the Dallas Police Department (DPD), asserting wrongful discharge and employment discrimination claims, state law claims, and claims for violation of his civil rights and various federal and state criminal and civil statutes.  (*See* docs. 3, 21.)[2]  He seeks punitive, compensatory, liquidated, and statutory damages; injunctive and declaratory relief; pre-judgment and post-judgment interest; and his reasonable and necessary attorney's fees and costs of suit against all defendants.  (doc. 21 at 178-79.)

Plaintiff, an "Arab citizen of the United States of America, of Asian and Jordanian descent,"

---

[1]By *Order of Reference* filed February 13, 2019 (doc. 13), this *pro se* case was referred to the assigned U.S. Magistrate Judge for full case management.  After his recusal on June 4, 2019, the case was reassigned.  (doc. 72).

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

was employed as a legal lead financial analyst by AT&T Services, Inc. (AT&T) beginning in December 2012.  (doc. 21 at 10, 14.)  On or about November 13, 2016, Plaintiff was arrested and charged with felony possession of a controlled substance.  (*Id.* at 16.)  After he was reassigned to a new division at AT&T, he executed a new employment agreement on September 15, 2017 (Employment Agreement).  It provided, in relevant part, that his employment was subject to termination for cause and without notice if he was convicted of a felony.  (*Id.* at 17.)  Although his criminal case was pending at the time he signed the agreement, he did not disclose it to AT&T.  (*Id.* at 16-17.)

On January 26, 2018, Plaintiff arrived at work at 9:00 AM, and two of his managers took him to the "investigation room" and "interrogated" him about his arrest.  (*Id.* at 25.)  They finished questioning him at noon, but he was locked in the room "against his will" and unable to take his medicine and eat lunch.  (*Id.* at 26.)  At 1:25 PM, one of Plaintiff's managers informed him that he was being suspended for failing to disclose the arrest and felony drug possession charge.  (*Id.*) When he asked to meet with human resources, the head of AT&T's "asset protection" arrived and threatened to call the police if he did not surrender his company-issued laptop and leave the premises.  (*Id.*)  Plaintiff alleges that because none of the managers had the authority to suspend him or take his laptop under the terms of the Employment Agreement, he told them to contact the police, "believing that the police would document the incident."  (*Id.*)

When Officer Black arrived in the room, the asset protection head directed him to "recover the laptop and accost [Plaintiff]."  (*Id.* at 27.)  Plaintiff attempted to explain to Officer Black that he was being unlawfully retaliated against by his manager, but he ignored him and "proceeded [to] act unlawfully malicious towards [him], threatening him with force and arrest before initiating

physical contact with [him] to recover the laptop and remove him from company property and intensifying the humiliation that was surrounding him that day." (*Id.*)   Plaintiff eventually surrendered his laptop to Officer Black and left the premises.  (*Id.* at 30.)  He alleges that despite being in his DPD uniform, Officer Black had been "off-duty" and was actually working security for AT&T at the time of the incident.  (*Id.* at 28.)

Plaintiff alleges that AT&T had "set an artificial deadline of February 6, 2018 for [him] to avoid termination by demonstrating that his felony charge had been dropped."[3]  (*Id.* at 23.)  On January 29, 2018, his criminal charges were dismissed.[4]  (*Id.*)  He alleges that he notified AT&T of the dismissal, but it still terminated his employment "with cause" on February 7, 2018, "based on an erroneous claim that [he] was required and failed to report his arrest sixteen (16) months prior." (*Id.*)

In May 2018, Plaintiff filed a complaint against Officer Black with DPD's internal affairs unit, alleging that he had failed to submit a police report for the January 26, 2018 incident; he later amended the complaint to include claims for assault, battery, and conspiracy. (*Id.* at 29.)  On June 11, 2018, Sergeant Hampton of the DPD called Plaintiff, informing him that she had concluded the investigation of his complaint, but Officer Black's "chain of command" needed to approve her report.  (*Id.*)  She allegedly told him that Officer Black had violated DPD's "code of conduct" when he failed to report his physical contact with Plaintiff.  (*Id.*)[5]  On September 21, 2018, Plaintiff called

---

[3]Because of this deadline, he allegedly "incurred $8,000 in personal expenses to reschedule the court date from February 6, 2018 to January 29, 2018." (*See* doc. 23.)

[4]He claims the record of his arrest was subsequently expunged in April 2018. (*See* doc. 21 at 16-17.)

[5]It is unclear whether he intends to allege claims against Sergeant Hampton, since she is not formally named as a defendant in his third amended complaint. (*See* doc. 21 at 138-40.)

the DPD about the complaint and spoke with Sergeant Mohaer, who told him that the investigation was not completed. (*Id.* at 29-30.) He also said that Officer Black did not violate DPD's code of conduct because he believed the incident at AT&T did not need to be reported. (*Id.*)[6] Plaintiff claims that DPD "returned no findings in December 2018." (*Id.* at 30.)

On December 31, 2018, Plaintiff filed a 113-page complaint asserting 45 causes of action against the City and 18 other defendants. (doc. 3.) After twice amending his complaint, on March 21, 2019, Plaintiff obtained leave to file a 180-page third amended complaint that contained 1,260 paragraphs, incorporated 310 pages of exhibits, and asserted 65 causes of action against the City and 19 other defendants. (*See* docs. 7, 8, 21.)[7]

Plaintiff sues the City under a theory of vicarious liability, asserting claims under 42 U.S.C. § 1983 against it and Officer Black, in his individual and official capacities, for violations of his rights under the First, Fourth, and Fourteenth Amendments to the Constitution.[8] (*Id.* at 6, 13-14, 118-19.) He also sues Officer Black, in his individual and official capacities, under 42 U.S.C. § 1981 for discrimination, retaliation, hostile work environment, and violating the Fourth, Fifth, Sixth, and Fourteenth Amendments; under § 1985(c) for conspiracy to interfere with his civil rights; for violations of the Hobbs Act, 18 U.S.C. § 1951, and the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961 and 1962; for violations of his constitutional rights under the First and Fourteenth Amendments; and for tortious interference with employment

---

[6]His third amended complaint alleges that Sergeant Mohaer lied and "routinely rejected [Plaintiff's] requests to follow up on his [DPD] complaint about [Officer Black]" (doc. 21 at 30-31), but it only asserts two causes of action against Sergeant Mohaer in his individual capacity for violations of the Hobbs and RICO Acts (*id.* at 13, 138-40).

[7]On April 17, 2019, the court denied Plaintiff's motion for leave to file a fourth amended complaint. (*See* doc. 44.)

[8]The third amended complaint generally asserts a cause of action under § 1983 against all defendants. (*See* doc. 21 at 118-19.)

4

agreement and prospective relations, civil conspiracy to commit tortious interference with employment agreement, defamation, and negligence under state law.[9] (*Id.* at 8, 14, 27, 107, 109, 112-14, 116-20, 125-34, 136-40.)

Plaintiff claims that Officer Black's physical contact and taking of his laptop "without a valid warrant, consent, or probable cause" violated his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. (*Id.* at 119.) He also claims that Officer Black violated his right to substantive due process and right to exercise his First Amendment rights when he "silenced [him] during the call and failed to take down any information in writing" and prevented him from "being able to adequately defend himself personally and professionally against [his manager's] false and reckless accusations." (*Id.* at 27, 119.) He argues the City is vicariously liable for Officer Black's unconstitutional conduct because "[a]ll actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of [the City]," and he was "acting in the course and scope of his employment for the City of Dallas and DPD." (*Id.* at 13-14, 119.)

On April 26, 2019, the City moved to dismiss Plaintiff's § 1983 claims against it under Rule 12(b)(6) for failure to state a claim. (doc. 55.) Plaintiff filed a response on May 29, 2019 (doc. 66), and the City filed a reply on June 13, 2019 (doc. 75). The City's motion is now ripe for recommendation.

## II.  RULE 12(b)(6)

The City moves to dismiss Plaintiff's § 1983 claims on grounds that his third amended complaint fails to plead a plausible claim for relief against it. (*See* doc. 55.)

---

[9]He also asserts a state law claim for assault and battery against Officer Black in his individual capacity. (*See* doc. 21 at 8, 112.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.[10] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the

---

[10]"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Plaintiff attaches the charge of discrimination, emails and other correspondence between him and AT&T, and other documents. (*See* doc. 21-1.) Because these documents are attached to his third amended complaint, they are considered part of the pleadings. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498.

speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 ((noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

### III.  42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*. To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.    *Respondeat Superior*

The City first moves to dismiss Plaintiff's § 1983 claims against it under the theory of *respondeat superior* based on Officer Black's alleged violation of his constitutional rights. (*See* doc.

55 at 5.)  Plaintiff contends that Officer Black violated his rights by making physical contact with him and seizing his laptop without cause or a valid warrant, and by failing to file a police report about the January 26, 2018 incident.  (doc. 21 at 6, 13-14, 118-19.)

Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of *respondeat superior*.[11]  *See Bd. of Cnty. Commis of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  A plaintiff who seeks to impose liability on local governments under § 1983 must therefore prove that his injury was caused by action pursuant to official municipal policy or custom.  42 U.S.C. § 1983; *see Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 691-95; *Piotrowski*, 237 F.3d at 578 (citing cases).

The City cannot be held vicariously liable for Officer Black's actions.  *See Brown*, 520 U.S. at 403; *see also Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690-91) ("It is well established that a city is not liable under § 1983 on the theory of *respondeat superior*.").  Plaintiff's § 1983 claims against the City under the theory of *respondeat superior* should be dismissed for failure to state a claim.

**B.    <u>Municipal Liability</u>**

The City contends that Plaintiff has failed to plead facts that would support a finding of municipal liability against it. (doc. 55 at 5-8.)

---

[11]*Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat superior*, Black's Law Dictionary (10th ed. 2014).

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694); *see also Valle*, 613 F.3d at 541-42; *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The official policy requirement means that "municipal liability under § 1983 is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even

heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures." *Spiller*, 130 F.3d at 167. It has also found that a single incident is not enough to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581.

### 1.    *Policy on Searches and Seizures and Substantive Due Process*

Plaintiff contends that "[a]ll actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of [the City]." (docs. 21 at 13-14; 66 at 27-28.)  He alleges that Officer Black "deprived [him] of his right to be free of unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that Defendants entered and recovered [his] laptop without a valid warrant, without consent, without probable cause, and without privilege." (doc. 21 at 27, 119.)  He also alleges that

10

"[he] has a property interest in his position as Lead Financial Analyst that falls within the scope of substantive due process and a constitutional right to exercise his First Amendment right," and Officer Black "without privilege silenced and deprived [him] of the constitutional and statutory right incident to his status as a member of AT&T." (*Id.* at 119.)  His third amended complaint does not specifically identify a policy, practice, or procedure that was officially adopted and promulgated by the City's policymakers, however.  (*See id.*)  Rather, he alleges only that Officer Black "took his actions while acting under the color of law and in the course and scope of his employment with the City of Dallas." (*Id.* at 119.)  His response clarifies that he is alleging that the City's "customs, policies, and practices" that were the cause of the alleged constitutional violations against him include "warrantless searches and seizures of minority citizens [and] the denial of substantive due process." (doc. 66 at 27-28.)[12]

Plaintiff does not allege any facts showing a pattern of similar incidents of alleged unreasonable searches and seizures or substantive due process violations.  (*See* docs. 21 at 27; 66 at 27-28.)  He only sets out the January 26, 2018 incident, and generally argues that Officer Black was acting within the scope of his employment when he allegedly violated his constitutional rights. (doc. 21 at 14.)  A single incident is insufficient to infer an official policy or custom; plaintiffs "must

---

[12]He also alleges constitutional violations resulting from "customs, policies, and practices," including "a code of silence whereby officers refuse to report the unconstitutional and criminal misconduct of other citizens or officers, including the unconstitutional and criminal conduct alleged in this Complaint; [and] a code of silence whereby officers remain silent or give false and misleading information to cover up unconstitutional and criminal misconduct, to protect themselves, and to protect other officers." (doc. 66 at 27-28.)  "Whether the legal basis of this claim is founded on the due process or equal protection clause, there is no federal constitutional right to have someone investigated or prosecuted for criminal wrongdoing."  *Amir-Sharif v. Dist. Attorney's Office*, No. 3:06-CV-2277-B, 2007 WL 530231, at *2 (N.D. Tex. Feb. 21, 2007) (citing cases); *see Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (stating that "private citizens do not have a constitutional right to compel criminal prosecution"); *Estate of Huff v. Abilene Police Dept.*, No. 1:15-CV-001-P-BL, 2015 WL 5674886, at *5 (N.D. Tex. Sept. 24, 2015) (citing cases) (recognizing that " 'there is no constitutional right to have police investigate allegations a party feels should be investigated.' ").  Because his allegations rely on the DPD's alleged failure to investigate or intervene based on his reports regarding Officer Black, he fails to state a violation of his constitutional rights.

show a 'persistent and widespread practice.' " *See World Wide Street Preachers Fellowship*, 591 F.3d at 753-54; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."). As in *Spiller*, mere assertions that individuals were "acting in compliance with the municipality's customs, practices or procedures" is insufficient to plead municipal liability. *See Spiller*, 130 F.3d at 167. Moreover, he has also failed to plead sufficient facts from which it can be inferred that there was a policy or persistent widespread practice of "warrantless searches and seizures of minority citizens" and "the denial of substantive due process." (*See* doc. 66 at 27-28.) Mere assertions that there was a policy is insufficient to allege municipal liability for any constitutional violation. *See Kremelberg v. Keeling*, No. 15-CV-3695-K, 2016 WL 7744408, at *10 (N.D. Tex. Dec. 12, 2016), *adopted by* 2017 WL 131822 (N.D. Tex. Jan. 12, 2017) (allegation that there was a policy, and assertion that discovery would be required to prove that officers were following policy, were insufficient to allege municipal liability under *Spiller*). Because Plaintiff essentially relies on a single incident plus generalities and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability. *See World Wide Street Preachers Fellowship*, 591 F.3d at 753-54; *see, e.g., Hester*, 2012 WL 1430539, at *3 (stating that a "single alleged incident is insufficient to infer" an official policy or custom).[13]

---

[13]Plaintiff also claims that "[m]unicipal policymakers *condone[d] and facilitate[d]*" DPD's "code of silence, whereby officers refuse to report the unconstitutional and criminal misconduct of other citizens or officers, including the unconstitutional and criminal conduct alleged in this Complaint, . . . [and] remain silent or give false and misleading information to cover up unconstitutional and criminal misconduct, to protect themselves, and to protect other officers." (doc. 66 at 27-28 (emphasis added).) The Supreme Court and Fifth Circuit have recognized that "a policy maker could 'ratify' a subordinate's illegal conduct, thus putting the force of a municipal policy behind it[.]" *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see Praprotnik*, 485 U.S. at 128 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final"). "Policymakers alone can create municipal liability, and so any violation must be causally

## 2.    *Failure to Train, Supervise, and Discipline*

Plaintiff appears to assert a § 1983 claim against the City for its alleged failure to train, discipline, or supervise Officer Black. (*See* doc. 66 at 27-28.)[14]

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th Cir. 2000)). In the Fifth Circuit, "to hold a municipality liable for failure to train an officer, it must have been obvious that 'the highly predictable consequence of not training' its officers was that they 'would apply force in such a way that the [constitutional] rights of [citizens] were at risk.'" *Id.* (quoting *Brown*, 219 F.3d at 461). "The failure to train must reflect a 'deliberate' or 'conscious' choice by a municipality." *World Wide Street Preachers Fellowship*, 591 F.3d at 756 (quoting *City*

---

traceable to them, not just to their subordinates." *Milam*, 113 F. App'x at 627. The ratification theory "is necessarily cabined in several ways . . . to prevent [it] from becoming a theory of *respondeat superior*," however. *Milam*, 113 F. App'x at 626-27. Plaintiff does not specifically assert a claim based on any policymaker's approval or ratification of Officer Black's allegedly unconstitutional conduct, and he fails to state any facts in support of his allegations. (*See* docs. 21; 66.) Accordingly, to the extent his third amended complaint may be liberally construed as asserting municipal liability based on a policymaker's ratification of Officer Black's conduct, he fails to state a claim. *See Reed v. Kerens Ind. Sch. Dist.*, No. 3:16-CV-1228-BH, 2017 WL 2463275, at *15 (N.D. Tex. June 6, 2017) (finding that the plaintiff's conclusory allegations were insufficient to establish municipal liability under the ratification theory); *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014) (determining that the plaintiffs "failed to allege facts capable of establishing a § 1983 claim that the City ratified the officers' conduct.").

[14]Plaintiff's third amended complaint does not specifically assert claims for failure to train, discipline, or supervise, but his response to the motion to dismiss mentions the City's alleged failure to train, discipline, or supervise officers. (doc. 66 at 27-28.) Because these claims and allegations were raised for the first time in his response, they are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473 at *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552 at *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). He has not been granted leave to amend his third amended complaint to add these allegations, and he has not shown that the defendants consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Because the *pro se* response may be liberally construed as a request for leave to amend his third amended complaint, the claim is address in an abundance of caution. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

*of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotation marks omitted).[15]

Here, Plaintiff alleges that Officer Black's alleged violations of his constitutional rights were caused by the City's customs, policies, and practices including:

> the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers regarding unconstitutional and criminal misconduct; the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in order to prevent unconstitutional and criminal misconduct by police officers[;] the failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers; the failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct; the approval, support, and encouragement of unconstitutional and criminal misconduct by police officers to avoid financial loss; and the failure to deter police officers from engaging in unconstitutional and criminal misconduct by maintaining deficient, defective, and ineffectual investigatory and disciplinary procedures.

(*See* doc. 66 at 27-28.)   He contends that the City and its policymakers were responsible for establishing all policies for the DPD, including the training of its police officers, "but [they] failed to implement and enforce such policies, practices and procedures for the DPD that respected [his] constitutional rights." (doc. 21 at 6.)   He claims that the City's "failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, caused [him] to experience [ ] unwarranted and excruciating physical and mental anguish."  (*Id.*)

Plaintiff's allegations focus only on Officer Black's actions against him.   He makes no

---

[15]There is an "extremely narrow" single incident exception in the context of failure-to-train claims.  *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014).  Under that exception, "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations" in "extreme circumstances."  *Brown*, 219 F.3d at 459; *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452-48).  To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation."  *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).  Even if Plaintiff argues that his allegations support this exception, it does not apply because he does not claim that a decision was made not to train Officer Black, or that he "was provided no training whatsoever."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("Our caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever); *see McClendon v. City of Columbia*, 258 F.3d 432, 442-43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on rehearing en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area.").

14

allegations of similar incidents occurring in the past in support of his assertion that the City failed to adequately train, supervise, or discipline its employees in the "warrantless searches and seizures of minority citizens" or "the denial of substantive due process." (*See* doc. 66 at 27-28.) He makes only conclusory allegations regarding the City's alleged failures, and his allegations do not suffice to show that it was obvious that the highly predictable consequence of the City's alleged failure to train, supervise, or discipline was that its officers would act in such a way that the constitutional rights of citizens were at risk. *See Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461). Additionally, he alleges no facts to support his assertion that the City's failure to train reflects deliberate indifference on the part of its policymakers. *See id.* Because he makes only formulaic recitations of the elements, and relies on general and conclusory allegations, his allegations do not support a finding of municipal liability under a theory of failure to train. *See Twombly*, 550 U.S. at 555.[16]

Plaintiff has failed to allege sufficient facts to raise his right to relief above the speculative level on his municipal liability claims against the City. *See Twombly*, 550 U.S. at 555. Because he appears to rely on a theory of *respondeat superior* and has not sufficiently alleged an official policy or custom, the City's motion to dismiss should be granted, and his § 1983 claims against it should be dismissed.[17] *See Cox*, 430 F.3d at 748; *see also Thomas v. State*, 294 F. Supp. 3d 576, 608-

---

[16]As noted, Plaintiff's response to the motion to dismiss mentions the City's alleged failure to discipline or supervise. (*See* doc. 66 at 27-28.) The elements required to prove municipal liability on a failure to discipline or supervise theory are the same as those required under a failure to train theory. *See E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citing cases). Accordingly, to the extent Plaintiff seeks to hold the City liable for its alleged failure to discipline or supervise officers, he fails to state a claim for the same reasons he fails to state a claim for failure to train.

[17]Plaintiff appears to assert a § 1983 claim against Officer Black in his official capacity. (*See* doc. 21 at 118-19.) An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's § 1983 claim against Officer Black in his official capacity is therefore essentially a claim against his government employer, the

09 (N.D. Tex. 2018) (determining that § 1983 claims against a county should be dismissed for failure to sufficiently allege a policy or custom).[18]

## IV. REMAINING CLAIMS

Plaintiff appears to seek declaratory and injunctive relief under federal law and attorney's fees under 42 U.S.C. § 1988 against all defendants, including the City. (*See* doc. 21 at 3, 99-101, 167-68, 175-78.) The City does not move to dismiss these claims, however. (*See* doc. 55.)

In addition, Plaintiff also asserts claims against Officer Black in his official capacity under § 1981 for discrimination, retaliation, hostile work environment, and violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments; under § 1985(c) for conspiracy to interfere with his civil rights; for violations of the Hobbs Act, RICO, and §§ 1961 and 1962; for violations of his constitutional rights under the First and Fourteenth Amendments; and for tortious interference with employment agreement and prospective relations, civil conspiracy to commit tortious interference with employment agreement, defamation, and negligence under state law.[19] (*Id.* at 8, 14, 27, 107, 109, 112-14, 116-20, 125-34, 136-40.)  As noted, these official capacity claims against Officer Black are essentially claims against the City. *See Graham*, 473 U.S. at 165.  The City also does not move to

---

City.  *See Graham*, 473 U.S. at 165.  The City does not expressly move to dismiss the § 1983 claims against Officer Black in his official capacity. (*See* doc. 55 at 5.)  Because Plaintiff has failed to state a claim for municipal liability against the City, however, the official capacity claims against Officer Black under § 1983 likewise fail.  *See Beavers v. Brown*, No. 3:13-CV-1395-B, 2013 WL 6231542, at *3 (N.D. Tex. Dec. 2, 2013) (finding that claims against county employees in their official capacities should be dismissed where the plaintiff failed to state a claim for municipal liability).

[18]Because Plaintiff has failed to sufficiently identify an official policy or custom to support his claim for municipal liability, it is unnecessary to reach the second and third elements. *See Pierce v. Kaufman Cty. Dist. Attorney's Office*, No. 3:16-CV-2554-G-BH, 2018 WL 5624195, at *6-7 (N.D. Tex. Sept. 27, 2018), *adopted by* 2018 WL 5620548 (N.D. Tex. Oct. 29, 2018); *Williams v. City of Irving, Texas*, No. 3:15-CV-1701-L-BH, 2017 WL 3822115, at *6 (N.D. Tex. July 14, 2017), *adopted sub nom. by* 2017 WL 3726980 (N.D. Tex. Aug. 30, 2017).

[19]He also asserts a state law claim for assault and battery against Officer Black in his individual capacity.  (*See* doc. 21 at 8, 112.)

dismiss those claims. (*See* doc. 55.)  Accordingly, these claims also remain pending against the City.

## VI.  RECOMMENDATION

The City's Rule 12(b)(6) motion to dismiss should be **GRANTED**, and Plaintiff's § 1983

claims against it and Officer Black in his official capacity should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 30th day of December, 2019.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE



## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE